**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

PEDRO MARTINEZ, individually and as the representative of a class of similarly situated persons,

                      Plaintiff,

     -against-

GUTSY LLC. d/b/a Proven**,**

                      Defendant.

Case No. 1:22-cv-409-NGG-RLM

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE COMPLAINT**

Dan Shaked, Esq.
Shaked Law Group, P.C.
14 Harwood Court, Suite 415
Scarsdale, New York 10583
Tel.  (917) 373-9128
E-mail:  ShakedLawGroup@gmail.com

*Attorney for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………….....   1

STATEMENT OF FACTS/PROCEDURAL HISTORY……………………………………   1

LEGAL STANDARD ON A MOTION PURUSAN TO FED. R. CIV. P. 12(B)(6)…………   4

ARGUMENT………………………………………………………………...………...   4

    I.    GUTSY'S WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION WITH A NEXUS TO A PHYSICAL LOCATION………………………………………   5

    II.    THE ADA APPLIES TO STAND-ALONE WEBSITE …………………..…….   7

        a.  Defendant's Website is a place of public accommodation……………………   8

        b.  The DOJ does NOT require a nexus to a physical location………………….   12

    III.    PLAINTIFF'S STATE AND CITY CLAIMS SURVIVE AS WELL …………..   12

CONCLUSION………………………………………………………………………...   13

# TABLE OF AUTHORITIES

## Cases

*Access Living of Metro Chi. v. Uber Techs., Inc.,* 351 F.Supp. 3d 1141, (N.D. Ill. 2018) …………………………………………………………………….. 11

*Access Now, Inc. v. Blue Apron, LLC*, No. 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112, at *13 (D.N.H. Nov. 8, 2017) ……………………………………………… 11

*Bell Atl. Corp. v Twombly.*, 550 U.S. 544 (2007)………………………………….. 4

*Bullard v. Drug Policy All.,* 18-cv-8081-KPF, 2019 U.S. Dist. LEXIS 222854 (S.D.N.Y. Dec. 30, 2019)……………………………………………………………. 12

*Del-Orden v. Bonobos, Inc.*, No. 17-cv-2744 (PAE), 2017 U.S. Dist. LEXIS 20925 (S.D.N.Y. Dec. 20, 2017)……………………………………………………... 9

*Dominguez v. Banana Republic, LLC,* 1:19-cv-10171-GHW, 2020 U.S. Dist. LEXIS 72193 (S.D.N.Y. April 23, 2020) ……………………………………………… 9

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001)……………………………………... 4

*HD Brous & Co. v. Mrzyglocki*, 03-CV-8385 (CSH), 2004 U.S. Dist. LEXIS 3095 (S.D.N.Y. Feb. 25, 2004) ……………………………………………………….... 11

*Jaquez v. Dermpoint, Inc.,* 20-cv-7589-JPO, 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y. May 20, 2021) ……………………………………………………………… 10

*Lopez v. Arby's Franchisor, LLC*, 19-cv-10074-VSB, 2021 U.S. Dist. LEXIS 43838 (S.D.N.Y. Mar. 8, 2021) ……………………………………………………… 10

*Martinez v. Mylife.com, Inc.*, 21-CV-4779 (BMC), 2012 U.S. Dist. LEXIS 201585 (E.D.N.Y. Nov. 1, 2021) ……………………………………………………. 8

*Mejico v. Alba Web Designs, LLC*, No. 7:20-CV-00039, 2021 U.S. Dist. LEXIS 13354, at *16 (W.D. Va. Jan. 25, 2021) ……………………………………………… 11

*Morgan v. Joint Admin Bd.*, 268 F.3d 456, 459 (7th Cir. 2001) ………………... 11

*Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196 (D.Mass. 2012)…. 11

*Noel v. New York City Tax and Limousine Comm'n*, 687 F.3d 63 (2d Cir. 2012) ……………………………………………………………………………… 4

*Paguada v. Athena Allergy, Inc.,* 21-cv-1245-KPF (S.D.N.Y. Feb. 22, 2022)…. 10

*Pallozzi v. Allstate Life Insurance Co.,* 198 F.3d 29 (2d Cir. 1999)……………. 9

*Robles v. Domino's pizza, LL.*, 2021 U.S. Dist. LEXIS 124356 at 14-15 (C.D. Cal.) ……………………………………………………………………………. 5

*Romero v. 88 Acres Foods, Inc.* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022) ……………………………………………. 8, 9, 10

*Sanchez v. Nutco, Inc.,* 2022 U.S. Dist. LEXIS 51247………………………… 4

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, (2021)………............................. 4

*Winegard v. Crain Comms., Inc.*, 20-cv-01509-AJN, 2021 U.S. Dist. LEXIS 60964 (S.D.N.Y. Mar. 30, 2021) ……………………………………………. 10

*Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021)……. 8

**Statutes**

42 U.S.C. §§ 12181 *et seq*…………………………………………………….. 1-3, 5

Fed. R. Civ. P. § 12(b)(6) …………………………………………………… 1, 4, 12

NY CLS Civ R §40 *et seq*…………………………………………………….. 3

N.Y. Exec. Law §292, *et seq* ……………………………………………….. 3

N.Y.C. Administrative Code §8-102, *et seq*..……………………………….... 3

Plaintiff Pedro Martinez ("Martinez" or "Plaintiff"), individually and as the representative of a class of similarly situated persons, respectfully submits this memorandum of law (the "MOL") in opposition to Defendant, Gutsy LLC's ("Gutsy" or "Defendant") Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. §§ 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

Defendant argues that the case should be dismissed because its website, [www.drinkculturepop.com](www.drinkculturepop.com) (the "Website") is not a place of public accommodation under 42 U.S.C. § 12181(7). The Court should deny the Motion because, (i) Defendant's Website is in fact a place of public accommodation because it has a nexus to public-facing physical locations; and (ii) even if it did not have a nexus to public-facing physical locations, stand-alone websites are a place of public accommodation under the Americans with Disabilities Act (the "ADA").

## STATEMENT OF FACTS/PROCEDURAL HISTORY

Plaintiff, Pedro Martinez, is a legally blind person who lost his sight when he was approximately thirteen years old, on or about 1987, resulting from a genetic condition which caused an incurable retinal detachment in both of his eyes. Martinez is a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the New York State Human Rights Law and the New York City Human Rights Law.

This case arises out of Gutsy's failure to make its Website accessible to blind individuals, which violates the effective communication and equal requirements of Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12181 – 12189. These provisions were enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities"[1] by assur[ing] equality of opportunity, full participation, independent living, and economic self-sufficiency."[2] "Congress passed the ADA in 1990 to fix a serious problem – namely, the seclusion of people with disabilities resulting in explicit and implicit discrimination."[3]

The Internet is a significant source of information, services, and transactions with instant and 24/7 availability and without the need to travel to attain them. Never has the Internet become more critical than in the period following the Covid-19 pandemic. Blind individuals access the Internet by using keyboard controls and screen reading software, which vocalizes information presented visually on a computer screen. Such software provides the only method by which blind individuals can independently access digital information and content. When websites are not designed to allow for use with screen reading software, blind individuals are unable to access the information, products, and services offered through the Internet.  Screen reading technology has existed for decades[4] and widely-accepted standards exist to guide entities in making their websites accessible to screen reading software.

Yet, despite readily available assistive technology, Gutsy has chosen to rely on an exclusively visual interface for its Website which contains thousands of access barriers that make it impossible for blind customers to use its website. Thus, Gutsy excludes the blind from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living.

---

[1] 42 U.S.C. § 12101(b)(1).
[2] 42 U.S.C. § 12101(a)(7)
[3] Kelly Johnson, *Testers Standing up for the Title III of the ADA*, 59 Cas. W. Res. L.Rev/ 693, 684 (2009) (citing H.R. Rep No. 101-485, pt. 2, at 28-29 (1990).
[4] Annemarie Coke, American Foundation for the Blind, A History of Accessibility at IBM (Mar. 2004), available at https://afb.org/aw/5/2/14760.

On January 25, 2022, Martinez filed the Complaint in this matter, which alleged causes of action against Defendant for: (i) Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act (the "ADA"); (ii) Violation of New York State Human Rights Law, N.Y. Exec. Law Article 15 (Executive Law §292 *et seq.*) (the "NYSHRL"); (iii) Violation of New York State Civil Rights Law, NY CLS Civ R, Article 4 (CLS Civ R §40 *et seq.*) (the "NYCRL"); (iv) Violation of New York City Human Rights Law, N.Y.C. Administrative Code §8-102, *et seq.*) (the "NYCHRL"); and Declaratory Relief.

Before filing the Complaint, Martinez visited the Website on numerous occasions, most recently on January 19, 2022, in order to make an online purchase of the Watermelon, Lime & Rosemary soda and the Feel Good Variety Pack. Complaint ¶¶ 10, 19, 40. However, he encountered numerous accessibility barriers which prevented him from making a purchase on the Website. Specifically, when Martinez attempted to make a purchase on the Website prior to the Filing Date, he was unable to complete a transaction because (i) he was unable to add a product to the shopping cart; (ii) he was unable to take advantage of any promotions; (iii) he was unable to select soda flavors; (iv) he was unable to select pack size; (v) he was unable to read the Nutritional Facts; and (vi) he was unable to learn about the "Subscription" details, amongst other specific access barriers that Plaintiff encountered on Defendant's Website. Complaint ¶ 33. These conditions continue to exist today.

Martinez alleges that Gutsy engaged in acts of intentional discrimination, including but not limited to the following policies or practices: (1) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or (2) constructed and maintained a website that is insufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or (3) failed to take actions to correct these access barriers in the face of

3

substantial harm and discrimination to blind class members. Complaint ¶44. Because of Gutsy's denial of full and equal access to, and enjoyment of, Gutsy's goods, benefits and services, Martinez and the class have suffered injury-in-fact which is concrete and particularized and actual and is a direct result of Gutsy's conduct. *Id*. ¶ 46.

## LEGAL STANDARD ON A MOTION PURSUANT TO FED. R. CIV. P. 12(B)(6)

As an initial matter, the Second Circuit cautions courts from prematurely dismissing complaints in civil rights violations. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204 (2021).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Sanchez v. Nutco, Inc.*, 2022 U.S. Dist. LEXIS 51247, at *14-*15 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff properly pleads such facial plausibility by including "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id* at *15. All reasonable inferences are drawn in the plaintiff's favor. *Id*. To survive dismissal, "plaintiff must provide the grounds upon which his claims rest through factual allegations sufficient to raise a right to relief above the speculative level." (internal citations omitted).

## ARGUMENT

I. **GUTSY'S WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION WITH A NEXUS TO A PHYSICAL LOCATION**

Defendant's website is a place of public accommodation within the definition of Title III

4

of the ADA, 42 U.S.C. § 12181 *et seq*. which provides that

    (a) GENERAL RULE

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation 42 U.S.C. § 12182.

    Place of Public Accommodation includes:

**(A)** an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
**(B)** a restaurant, bar, or other establishment serving food or drink;
**(C)** a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
**(D)** an auditorium, convention center, lecture hall, or other place of public gathering;
**(E)** a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
**(F)** a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
**(G)** a terminal, depot, or other station used for specified public transportation;
**(H)** a museum, library, gallery, or other place of public display or collection;
**(I)** a park, zoo, amusement park, or other place of recreation;
**(J)** a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
**(K)** a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
**(L)** a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

    Nowhere in the General Rule or in the definition of a place of public accommodation does it state that the place of public accommodation must be a place branded with the individual's logo, i.e. a Gutsy store or a Culture Pop store. In *Robles v. Domino's Pizza, LLC*, 2021 U.S. Dist. LEXIS 124356 at 14-15 (C.D. Cal.), the court expressly noted that the matter's undisputed facts included that Defendant's products were available in **"independently owned"** physical locations when it granted partial summary judgment to Robles and ruled that Domino's Pizza was to bring its website into compliance and pay Plaintiff's legal fees after allowing him to amend his Complaint. While simply having your products available on the shelves of

independently owned retailers may suffice to establish a nexus to a physical location, the nexus under the facts of this case are significantly stronger and more intertwined.

Defendant's sodas are found in nearly 1,500 retail stores around the country and tens of stores in this district alone.

More significantly, Gutsy's founder, Tom First, in an interview with Foodnavigator-usa.com published on November 18, 2021, a copy of which is annexed hereto as **Exhibit A**, highlighted the dominion and control that Gutsy has on how its products are sold in retailers' stores.[5] "We've had conversations with retailers that are really thinking about this functional soda space as a refreshing new part of the aisle" he told the interviewer. Moreover, First added that Gutsy's focus over the next 12 months is "performing well with the **retail partners** we are in today and driving velocity, and then **selectively** working with new retailers" (emphasis added). "We don't want to go everywhere too quickly, we want to make sure we can **support retailers** with **good execution at retail**, **building merchandising assets, good promo calendars, and having the right people working in the stores**" (emphasis added). So even if Gutsy does not have its own 'Gutsy branded' or 'Culture Pop' branded stores, its reference to retailers as "partners" and its focus on "selectively" working with new retailers and of supporting the retailers where Gutsy's products are sold in "good execution at retail, building merchandising assets, good promo calendars, and having the right people working in the stores" is in essence the equivalent of having its own brick-and-mortar physical location and operating a place of public accommodation.

---

[5] See Elaine Watson, *Culture Pop founder: Fun and functionality are driving a new sub-category in soda*, an interview with Tom First, Gutsy's founder (Nov. 18, 2021), available at https://www.foodnavigator-usa.com/Article/2021/11/18/Culture-Pop-founder-Fun-and-functionality-are-driving-a-new-sub-category-in-soda

Thus, it is clear that in the case of this Defendant, which maintains dominion and control of how and where its products are sold and utilizes independently-owned retailers at physical locations to sell its products, Defendant's website is a place of public accommodation with a nexus to physical locations and this motion must be denied.

## II. THE ADA APPLIES TO STAND-ALONE WEBSITES

While Plaintiff maintains his belief that Defendant's Website is a place of public accommodation due to its nexus to physical locations where it has dominion and control over how and where its products are sold, this section of the Memorandum of Law will argue that even if Defendant's website was a stand-alone website, it is still a place of public accommodation.

If a blind person tries to buy a dining table on the Raymour & Flanigan website (Raymour & Flanigan is a national furniture retailer with hundreds of stores around the country) and encounters accessibility barriers, then he or she could sue Raymour & Flanigan under the ADA. However, under Defendant's theory, if a blind person tries to buy the identical table on Wayfair.com (a furniture retailer that sells exclusively on the Internet) and encounters accessibility barriers, then he or she cannot sue Wayfair. What a coup for Wayfair!

Even if you are a strict interpreter of the Constitution and of Federal statutes, you can see the fallacy in this argument. The learned Judges Eric Komitee and Brian M. Cogan disagree with this conclusion. As you read Defendant's Memorandum of Law and will read Plaintiff's argument below, the question of whether a stand-alone website is a place of public accommodation has divided the judiciary pretty much down the middle.

Judges Komitee and Cogan make a good and convincing argument as to why a stand-alone website is not a place of public accommodation. Judges Kimba M. Wood, Gregory Woods, Vernon

S. Broderick, Alison J. Nathan, J. Paul Oetken, and Katherine Polk Failla make a similarly good and convincing argument as to why a stand-alone website is a place of public accommodation.

If Your Honor accepts Plaintiff's argument in Argument paragraph "I" above – that Defendant's website has a nexus to a physical location – then you do not need to decide the argument in this paragraph.

   a. **Defendant's Website is a place of public accommodation**

Senior Judge Kimba M. Wood in *Romero v. 88 Acres Foods, Inc.,* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022) issued a comprehensive rejection of the "brick-and-mortar" standard. This decision unequivocally held that "websites qualify as places of public accommodation, albeit electronic ones, and as such are required to provide equal services to visually impaired and sighted people." *88 Acres Foods Inc.,* 2022 U.S. Dist. LEXIS 9040 at *16. After a thorough analysis of foreign circuits, including the Third, Sixth and Ninth Circuit, as well as the E.D.N.Y. decisions in *Martinez v. Mylife.com, Inc*., 21-cv-4779 (BMC), 2012 U.S. Dist. LEXIS 201585 (E.D.N.Y. Nov. 1, 2021) and *Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021), Judge Wood wrote "[t]his Court does not find *Wingard's* reasoning compelling." *Id*.

Specifically, looking to the language of Section 12181(7) of the ADA, Judge Wood found that in addition to listing physical places such as restaurants, hotels, and gymnasiums as covered accommodations, other entities such as "travel services" were listed. *Id.* at *17-*18. Additionally, Judge Wood noted that the relevant section lists "other sales or retail establishments" as covered entities. These additions must indicate that non-physical retailers are covered for otherwise, *88 Acres* held, one could come out with the "absurd result that people with disabilities are protected

8

if they shop in-store at Whole Foods, but not if they shop online at Whole Foods[6]." *Id*. at *18. Rejecting the Eastern District's reasoning, the court in *88 Acres* then determined that the constructions *noscitur a sociis* and *ejusdem generis*, should be read in the context of this catch-all clause regarding service and other retail establishments as encompassing non-brick-and-mortar sales establishments. *Id*. at *18.

Furthermore, Judge Wood analyzed the legislative history of the ADA, noting that Congress intended that the "types of accommodation and services provided to individuals with disabilities . . . should keep pace with the rapidly changing technology of the times." *Id*. at *19. This applies to the large volume of interstate commerce transacted through websites. *Id*. Given the prominence of online retail establishments in providing goods and services directly to customers, Congress' intent in passing the ADA would be stymied were public accommodations limited to physical spaces.

Indeed, Judge Wood's ruling is the culmination of a long series of rulings by Southern District Judges. Following the seminal holding by the Second Circuit in *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28, 32 (2d Cir. 1999) that "the [ADA] was meant to guarantee . . . more than mere physical access," Judge Engelmayer held in *Del-Orden v. Bonobos, Inc*., 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251, at *24 (S.D.N.Y. Dec 20, 2017): "A commercial website itself qualifies as a place of public accommodation to which Title III of the ADA affords a right of equal access." To hold otherwise, "Congress's purposes in adopting the ADA would be frustrated were the term public accommodation given a narrow application under which access to the vast world of Internet Commerce would fall outside the statute's protection." From *Del-*

---

[6] Defendant's counsel will undoubtedly argue that Judge Wood's selection of Whole Foods as an example supports its argument since the Whole Foods website does have a nexus to physical locations. This is a **red herring** since the defendant in that case, 88 Acres, is a stand-alone website with no nexus to a physical location.

9

*Orden* through *88 Acres*, other courts of the Southern District have continuously held that arbitrarily excluding entities that sell and distribute goods and services digitally as opposed to physical locations is both unworkable and not in keeping with the text and history of the statute. These include:

•   Judge Gregory Woods, *Dominguez v. Banana Republic, LLC*, 1:19-cv-10171-GHW, 2020 U.S. Dist. LEXIS 72193, at *22-*23 (S.D.N.Y. April 23, 2020) ("[Requiring] some nexus between the website and the physical place of public accommodation is both unworkable and would produce absurd results.");

•   Judge Broderick, *Lopez v. Arby's Franchisor, LLC*, 19-CV-10074 (VSB), 2021 U.S. Dist. LEXIS 43838, at *15 (S.D.N.Y. Mar. 8, 2021) ("a company's website is essentially a stand in for its brick-and-mortar business establishments.");

•    Then-District Judge Nathan, *Winegard v. Crain Comms., Inc*., 20-cv-01509 (AJN), 2021 U.S. Dist. LEXIS 60964, at *6 (S.D.N.Y. Mar. 30, 2021) ("Defendant's website is a place of public accommodation.");

•   Judge Oetken, *Jaquez v. Dermpoint, Inc.,* 20-cv-7589-JPO, 2021 U.S. Dist. LEXIS 96067, at *7-*8 (S.D.N.Y. May 202, 2021) ("multiple district courts in this circuit-including this one-have held that websites qualify as places of public accommodation, even when they are not attached to a traditional brick-and-mortar store."); and

•   Judge Failla, *Paguada v. Athena Allergy, Inc.*, 21-Cv-1245 (KPF) (S.D.N.Y. Feb. 22, 2022). There is no ambiguity – in the Second Circuit, commercial websites are places of public accommodation under the ADA.

Defendant's motion simply chooses to ignore recent clear and unambiguous decisions from judges in the Southern District of New York that a website is, unequivocally, a place of public accommodation. This precedent had been well established since 2017 and has continued uninterrupted through January 2022, when it was reaffirmed by Senior Judge Kimba Wood in *Romero v. 88 Acres Foods, Inc.,* 20-CV-9215 (KMW), 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022). This highly persuasive decision was reached over three months before the filing of the Motion to Dismiss, yet Defendant ***never mentions it,*** casually noting that "some courts in this district have expressly held that websites are places of public accommodation, and a handful

have found in favor of plaintiffs . . ." Def. Mem. at 5-6 without naming a single case. But that decision was not simply Judge Wood putting forth "policy arguments about the importance of e-commerce." *Id*. Rather, this decision vigorously analyzed the two Eastern District cases which form the core of Defendant's argument, as well as the history of this question in the Second Circuit as well as other circuits, including the Third, Sixth and Ninth, cited in Defendant's papers. Judge Wood unabashedly deconstructed and discounted the same logic Defendant has put forth as leading to an "absurd result." The Court in *88 Acres* did its homework, Defendant has not. Failure to contend with this decision, at a minimum, renders Defendant's Motion to Dismiss misleading, and at a maximum, potentially sanctionable[7].

    Defendant focuses on foreign jurisdictions to suggest that the Southern District's rulings are anomalies. This is false. For example, the Seventh Circuit also refused to limit its interpretation of places of public accommodation to physical locations, and when the seminal case in that Circuit came to pass, the Supreme Court of the United States denied certiorari. (cert. denied); *see also Morgan v. Joint Admin Bd*., 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation"). Similar decisions have been issued by various federal district courts in several circuits. *See, e.g.*, *Mejico v. Alba Web Designs, LLC*, No. 7:20-CV-00039, 2021 U.S. Dist. LEXIS 13354, at *16 (W.D. Va. Jan. 25, 2021) ("[P]laces of public accommodation are not limited to physical, brick-and-mortar establishments and instead include commercial websites that offer good [sic] and services. The fact that [defendant] has no physical location open to the public is not dispositive"); *see also Access Living of Metro*

---

[7] *See HD Brous & Co. v. Mrzyglocki*, 03 Civ 8385 (CSH), 2004 U.S. Dist. Lexis 3095 at *52 (S.D.N.Y. Feb. 25, 2004 (counsel's citation to out of circuit persuasive authority, without citing to significant contrary authority within the circuit of the sitting court, was held to be a "distorted" argument subject to Rule 11).

11

*Chi. v. Uber Techs., Inc.*, 351 F. Supp 3d 1141, 1156 (N.D. Ill. 2018) (finding "[a] place of public accommodation does not have to be a physical space and plaintiffs have plausibly alleged that Uber [a digital phone app] operates a place of public accommodation"); *Access Now, Inc. v. Blue Apron, LLC*, Civil No 17-cv-116-JL, 2017 U.S. Dist. LEXIS 185112, at *13 (D.N.H. Nov. 8, 2017) ("Recognizing that structural barriers may prevent individuals with disabilities from accessing and fully engaging with websites, the DOJ has construed websites as 'places of public accommodation' under Title III of the ADA for over 20 years"); *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012). Thus, whether Defendant's Website is connected to a physical place of business is immaterial for the purposes of the ADA.

    b. **The DOJ does NOT require a nexus to a physical location**

On March 22, 2022, the U.S. Department of Justice, Civil Rights Division, issued a Guidance on Web Accessibility and the ADA (the "DOJ Guidance"), a copy of which is annexed hereto as **Exhibit B**. Page 7 of the DOJ Guidance state that "[w]hen Congress enacted the ADA in 1990, it intended for the ADA to keep pace with the rapidly changing technology of our times. Since 1996, the Department of Justice has consistently taken the position that **the ADA applies to web content**" (emphasis added). The DOJ Guidance then provides sample cases in which the department is committed to "ensure website accessibility for people with disabilities." The Title III samples list four corporations that the DOJ reached an agreement with regarding website accessibility. Two of them, Teachers Test Prep, Inc. and Peapod, are stand-alone websites with no nexus to a physical location; yet, they were subject to the ADA and considered by the DOJ to be places of public accommodation. DOJ Guidance at pages 8-9.

So if the Department of Justice, as recently as March 22, 2022, believes that the ADA applies to stand-alone websites, who are we to argue?

### III. PLAINTIFF'S STATE AND CITY CLAIMS SURVIVE AS WELL

For the reasons discussed above, Defendant's attacks on Plaintiff's New York State and New York City claims should also fail. Defendant asserts that the Court must likewise dismiss those claims because Plaintiff lacks standing or a valid federal claim. Def. Mem. at 6. However, as demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action under 12(b)(6). *See Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854, at *23-*24 (S.D.N.Y. Dec. 30, 2019 ("[a] court shall exercise supplemental jurisdiction if a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy." (*citing* 28 U.S.C. §1367(a)).

Accordingly, Defendant's request to obtain dismissal of the New York State and New York City claim should likewise be denied.

### CONCLUSION

For the foregoing reasons, the Court should deny the Motion and order such other and further relief as may be appropriate or necessary in favor of Martinez.

Dated: May 27, 2022
      Scarsdale, New York

                              /s/Dan Shaked
                              Dan Shaked, Esq.
                              Shaked Law Group, P.C.
                              14 Harwood Court, Suite 415
                              Scarsdale, New York 10583
                              Tel. (917) 373-9128
                              E-mail: ShakedLawGroup@gmail.com

                              *Attorney for Plaintiff*